UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DE'BEY,

                          Plaintiff,

          - against -

THE CITY OF NEW YORK, MUBANGA
NSOFU, MARSHA WEAKS, CONRAD
SEIVWRIGHT, OFFICER STEPHANIE EIEL,
OFFICER CASTELLANOS,

                          Defendants.

**ORDER**

20 Civ. 1034 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

          Pro se Plaintiff John De'Bey brings this action under 42 U.S.C. §§ 1983 and 1985

and New York law against the City of New York (the "City"), New York City Police

Department ("NYPD") Officers Castellano and Stephanie Eiel, the New York City Health +

Hospitals Corp. ("HHC"), and New York City Administration for Children's Services ("ACS")

employees Mubanga Nsofu, Conrad Seivwright, and Marsha Weekes (collectively,

"Defendants").[1]  (Second Am. Cmplt. (Dkt. No. 62) ¶¶ 1-22)  Defendants have moved to dismiss

portions of the Second Amended Complaint ("SAC").  (Mot. (Dkt. No. 93); Def. Mot. to Dismiss

("MTD") Br. (Dkt. No. 94) at 9-10)[2]

---

[1]  Plaintiff has misspelled the names of Defendants Seivwright, Castellano and Weekes.  (Second
Am. Cmplt. (Dkt. No. 62) at 1; Def. MTD Br. (Dkt. No. 94) at 1)  This order uses the correct
spelling of their names.  Moreover, although HHC is not named as a defendant, it is clear from
the Second Amended Complaint (Second Am. Cmplt. (Dkt. No. 62), ¶¶ 419-27) that Plaintiff
purports to assert claims against that entity.
[2]  The page numbers of documents referenced in this order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

This Court referred Defendants' motion to Magistrate Judge Sarah L. Cave.  (Dkt. No. 86)  Judge Cave has issued a Report & Recommendation ("R&R") recommending that: (1) Defendants' motion to dismiss be granted in part and denied in part; and (2) leave to amend be denied.  (R&R (Dkt. No. 102) at 47-48)  The R&R will be adopted as set forth below.

## BACKGROUND

### I.   FACTS[3]

At all relevant times, De'Bey, his wife Sylfronia King, and their two children ("A.A" and "K.A.") lived in Wise Towers, a New York City Housing Authority facility in Manhattan.  (SAC (Dkt. No. 62) ¶¶ 118, 145-46)

On February 13, 2019, King and the children visited the children's grandmother in Queens, New York.  (Id. ¶ 24)  After King had an argument with a groundskeeper at the grandmother's property, the groundskeeper called ACS to report that De'Bey's son was outside without supervision.  (Id. ¶¶ 25, 27)  Defendant Seivwright and another ACS employee arrived at the grandmother's home, but King refused to let them in.  (Id. ¶¶ 27-28)  Seivwright then "called the New York City Police Department to assist with a warrantless search" of the grandmother's property, "using a purported policy and . . . custom known as 'Safety Interventions,'" by which ACS "force[s] entry into one's home by simply weaponizing the police to do so."  (Id. ¶¶ 28, 50-51)

---

[3]  The parties have not objected to Judge Cave's recitation of the alleged facts.  Accordingly, this Court adopts her account of the alleged facts in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

Eight NYPD officers arrived and entered the grandmother's home "without consent or a warrant." (Id. ¶¶ 29, 31)  The officers then examined De'Bey's children "for marks, bruises and scratches," and concluded that both children "appeared healthy and unharmed." (Id. ¶¶ 34-35)  After the children were inspected, Seivwright told King that the children could not remain at the grandmother's home because the residence had no running water or gas. (Id. ¶ 36)  The grandmother told Seivwright that the children were only visiting, and provided Seivwright with De'Bey's phone number. (Id. ¶ 38)  De'Bey spoke to Seivwright by telephone, and he instructed King to cooperate with Seivwright and bring the children home. (Id. ¶¶ 39-41)

Seivwright brought King and the children back to the couple's apartment, where De'Bey was waiting. (Id. ¶¶ 43-44)  Seivwright examined the apartment and deemed it safe, and also examined the children for a second time. (Id. ¶¶ 46, 52)  De'Bey claims that "he did not feel comfortable with [ACS] forcing its way into his home using his children as an [ex]cuse for invasion of privacy," but that "Seivwright indicated that it was mandatory or else he couldn't leave the children with [De'Bey] or [King]." (Id. ¶¶ 47-48)

While Seivwright was inspecting the apartment, De'Bey informed Seivwright that the family followed a vegan diet, and that the children were referred to as "Boy King" and "Girl King."  De'Bey explained that he was of West African heritage and that the children would choose names for themselves at age thirteen. (Id. at 89)  According to De'Bey, Defendants Seivwright and Nsofu expressed concern for the children's emotional and physical development and safety because of "Plaintiff['s] eccentric, unorthodox and Afrocentric lifestyle[,] which is directly related to his Akom religion." (Id. ¶ 103)  Seivwright documented his concerns in an ACS report and forwarded the case "to the borough office for continued investigation." (Id. at 91)

On February 21, 2019, De'Bey and King had a disagreement, and De'Bey left the couple's apartment for about a week.  (Id. ¶¶ 56-59, 62)  On February 26, 2019 at 11:00 p.m., De'Bey received a phone call from an ACS supervisor informing him that ACS employees – Defendants Weekes and Nsofu – were at his home based on a report from one of De'Bey's neighbors that his daughter was malnourished.  (Id. ¶¶ 60, 63)

Weekes and Nsofu were not able to obtain King's consent to enter the apartment, so they contacted Defendant NYPD Officer Castellano and asked him "to open [the apartment] door in the early hours of the morning to assist in their investigation."  (Id. ¶ 75)  Officer Castellano spoke by telephone with De'Bey, and explained that "they were going to 'break the door down'" if De'Bey did not convince King to open the door.  (Id. ¶ 79)  Fearing that Weekes, Nsofu, and Officer Castellano would "violate the law and break the door down without a warrant and possibly hurt [King] or wors[e]," De'Bey convinced King to open the door.  (Id.)  After entering the apartment, Weekes, Nsofu, and Officer Castellano discovered that De'Bey's daughter A.A. was "severe[ly] malnourish[ed]."  (Id. ¶ 81)

On February 27, 2019, ACS filed two petitions under Article 10 of the New York Family Court Act (the "Petitions") in New York County Family Court against De'Bey and King, seeking orders declaring that their children were "neglected."  (Id. ¶ 109; Pet. 1 (Dkt. No. 95-1); Pet. 2 (Dkt. No. 95-2))[4]  Nsofu verified the contents of both Petitions.  (SAC (Dkt. No. 62)

---

[4]  Because the Petitions and resulting court orders are filings in a related court proceeding, and because De'Bey does not contest their authenticity, this Court – like Judge Cave – takes judicial notice of those materials "to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).  Moreover, while the Petitions were filed against King and "Shawn Debey aka Shawn Thurman," (see Pet. 1 (Dkt. No. 95-1) at 2; Pet. 2 (Dkt. No. 95-2) at 2), De'Bey acknowledges that he has been known as "Sean Thurman," and that the Petitions were filed against him as a "person legally responsible" for the children.  (SAC ¶¶ 2, 115, 182)

¶ 109; Pet. 1 (Dkt. No. 95-1) at 5; Pet. 2 (Dkt. No. 95-2) at 5)  De'Bey alleges that Nsofu made false statements in the Petitions and omitted material information, including Seivwright's finding that De'Bey's daughter appeared healthy on February 13, 2019.  (SAC (Dkt. No. 62) ¶¶ 110-21, 137)

On February 27, 2019 – the same day that the Petitions were filed – and after an ex parte hearing, the Family Court granted the Petitions and ordered the temporary removal of De'Bey's children.  (Temp. Removal Order 1 (Dkt. No. 95-3) at 3; Temp. Removal Order 2 (Dkt. No. 95-4) at 3)

De'Bey returned to the couple's apartment on February 27, 2019, and that evening three police officers – including Defendant NYPD Officer Stephanie Eiel – arrived at De'Bey's apartment and asked him to come to the local precinct.  (SAC (Dkt. No. 62) ¶¶ 180-186)

After De'Bey entered the precinct, police confiscated his cellphone, which they later provided to the District Attorney's office.  The cellphone has not been returned to De'Bey.  (Id. ¶¶ 189-90, 199-202, 204)  At the precinct, Officer Eiel showed photographs to De'Bey "in which [his] daughter had appeared to have lost a significant amount of weight from the time [De'Bey] left his home [on February 21, 2019]."  (Id. ¶ 192)  De'Bey told Officer Eiel that "she looks a lot smaller than she did when he had last saw her over 7 days ago."  (Id. ¶ 193)  At this point, Officer Eiel read Miranda warnings to De'Bey and arrested him for child endangerment.  (Id. ¶¶ 194, 207)

After his arrest, De'Bey was held at Rikers Island for approximately two months.  (Id. ¶¶ 165-67)  De'Bey asserts that – during this time – he was never contacted about the status

of his children and "could not advocate for himself to be produced into Family or Housing court."  (Id. ¶¶ 166-67, 171, 174-75)

On April 30, 2019, De'Bey pleaded guilty to endangering the welfare of a child. (Plea Tr. (Dkt. No. 95-5) at 3, 10; SAC (Dkt. No. 62) ¶ 210)[5]  During his plea allocution, De'Bey admitted that (1) he was A.A.'s father; (2) on about February 26, 2019, he "knowingly acted in a manner likely to be injurious to the welfare of a child under the age of seventeen"; (3) neither he nor King had taken A.A. to see a doctor for any type of medical care since her birth; (4) in January and February 2019, he was aware that A.A. had lost all of the weight that she had gained since her birth, and that she "appeared to be severely underweight and she needed medical attention"; (5) "during that time period, [De'Bey and King] continued to feed [A.A.] an exclusively vegan diet"; and (6) on February 16, 2019, A.A. was in De'Bey's care and, at that time, weighed approximately seven pounds.  (Plea Tr. (Dkt. No. 95-5) at 8-10)  De'Bey contends that these admissions were made "under coercion" and were inaccurate, because "he did not feed his daughter at all," since King "handled this responsibility."  (SAC (Dkt. No. 62) ¶¶ 211-17) De'Bey was sentenced to 60 days' imprisonment and three years' probation.  (Plea Tr. (Dkt. No. 95-5) at 6, 11)

De'Bey was released on May 5, 2019.  (SAC (Dkt. No. 62) ¶ 153)  As a condition of De'Bey's probation, he was required to seek mental health treatment.  (Id. ¶ 248)  On July 24, 2019, De'Bey went to a mental health clinic operated by HHC and met with a psychiatrist.[6]  (Id.

---

[5]  Defendants have submitted the transcript of De'Bey's plea allocution with their motion to dismiss.  (See Plea Tr. (Dkt. No. 95-5))  Because De'Bey has not objected to the authenticity of the transcript, this Court – like Judge Cave – takes judicial notice of De'Bey's guilty plea proceeding.  See Kramer, 937 F.2d at 774.

[6]  The SAC alleges that the clinic was operated by "NYC HEALTH + HOSPITALS METROPOLITAN."  (SAC (Dkt. No. 62) ¶ 247) (emphasis in original)  Defendants represent that De'Bey received his care "at Metropolitan Hospital, a constituent hospital of [HHC]."  (Def.

¶¶ 248-49)  De'Bey alleges that, after this office visit, the psychiatrist prepared a report falsely stating that De'Bey's mother and sister "suffer[ed] from bipolar disorder."  (Id. ¶ 254)  De'Bey claims that the psychiatrist made this diagnosis because HHC "knew that [De'Bey] wanted to place his children with his [m]other and [s]ister," and was "attempt[ing] to deprive [De'Bey] of his right to assign his [c]hildren to his [m]other and [s]ister."  (Id. ¶¶ 257, 422)

In November 2019, De'Bey and King had another son.  (Id. ¶ 98)  On January 7, 2020, unidentified City employees confronted De'Bey and King while they were visiting their other children at a foster care facility and asked about the whereabouts of their newborn son.  (Id. ¶¶ 97-98)  De'Bey stated that his son had been staying with De'Bey's mother and sister because of the "open case."  (Id. ¶ 99)  That night, unidentified ACS employees and NYPD officers arrived at De'Bey's mother's home and – without a warrant – "remove[d] [De'Bey's] child out of the care of [the child's] [g]randmother."  (Id. ¶ 100)

## II.    <u>PROCEDURAL HISTORY</u>

The Complaint was filed on February 6, 2020 (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on February 10, 2020.  (Am. Cmplt. (Dkt. No. 3))  After Judge Cave granted De'Bey leave to amend for a second time, De'Bey filed the SAC on November 12, 2020.  (See Am. Opinion & Order (Dkt. No. 59) at 11; SAC (Dkt. No. 62))

Pursuant to 42 U.S.C. §§ 1983 and 1985, the SAC asserts that

(1)    the City, Nsofu, Weekes, Seivwright, and Officer Castellano violated De'Bey's Fourth Amendment rights and his Fourteenth Amendment "right

---

MTD Br. (Dkt. No. 94) at 28)  HHC has appeared as a Defendant in this action "[b]ecause NYC Health + Hospitals/Metropolitan is a facility owned and operated by [HHC] . . . [and] may not be sued independently."  (HHC May 27, 2020 Ltr. (Dkt. No. 44) at 1 n.2 (quotation marks, citations, and original alterations omitted)).  De'Bey has not objected to HHC's appearance on behalf of Metropolitan Hospital.

to due process of law" by entering his apartment on February 13 and
February 27, 2019;[7]

(2)     the City, Nsofu, Seivwright, and Officer Eiel violated De'Bey's First and
        Fourteenth Amendment rights by removing his children due to his
        religious practices;

(3)     the City and Officer Eiel violated De'Bey's Fourth Amendment rights by
        seizing his cellphone on February 27, 2019;[8]

(4)     the City and Nsofu violated De'Bey's right to procedural and substantive
        due process by not producing him for a Family Court proceeding while he
        was incarcerated at Rikers Island, and by removing his children;[9]

(5)     the City violated De'Bey's right to substantive and procedural due
        process, and his Sixth Amendment rights, by not serving him with the
        Petitions for the emergency removal of his children;

(6)     the City violated De'Bey's First and Fourteenth Amendment rights by
        charging him with child neglect due to his religious practices;

(7)     the City and Nsofu violated De'Bey's "civil, constitutional and statutory
        rights," because Nsofu committed perjury in, and omitted exculpatory
        information from, the emergency removal Petitions;

(8)     the City violated De'Bey's Fourth and Fourteenth Amendment rights by
        "depriv[ing] [him] of his right to receive visits with his children"; and

(9)     the City violated De'Bey's Fourth and Fourteenth Amendment rights by
        "denying [him] fundamental expanded visits based solely on an
        unsubstantiated mental health claim."

(SAC (Dkt. No. 62) ¶¶ 283-310, 322-47, 372-96, 428-36, 445-53)  The SAC also asserts a

"conspiracy" claim against the City, Nsofu, Officer Castellano, and Officer Eiel under 42 U.S.C.

§ 1985, alleging that they "made an agreement to attempt to cover up the forced entry into

---

[7] De'Bey also asserts an essentially duplicative claim against the City based on the alleged
unconstitutional policy or practice of "Safety Interventions" in child neglect cases.  (SAC (Dkt.
No. 62) ¶¶ 348-61)

[8] De'Bey also appears to assert procedural and substantive due process claims based on the
seizure of his cellphone.  (SAC (Dkt. No. 62) ¶ 327)

[9] De'Bey also asserts an essentially duplicative claim alleging that the City violated his rights
under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by
not producing him for Family Court and Housing Court proceedings while he was incarcerated at
Rikers Island.  (SAC (Dkt. No. 62) ¶¶ 397-405)

[De'Bey's] home" by "ma[king] up fictitious charges of assault and reckless endangerment"

against De'Bey.  (Id. ¶¶ 362-68, 370-71)

>    Under New York law, the SAC asserts claims

(1)    against the City for negligent hiring and retention, because "[i]t's obvious that the individual defendants in this case have no training on any of [De'Bey's] rights, with a focus on the [First, Fourth, Fifth, and Fourteenth] [A]mendments of the U.S. Constitution and [the New York Constitution's Bill of Rights]";

(2)    against the City for unidentified "tortious acts" of its employees, under a theory of respondeat superior;

(3)    against the City and HHC for making a "[f]alse [m]edical [r]ecord";

(4)    against the City and Nsofu for false imprisonment based on Nsofu's allegedly false statements in the emergency removal Petitions;

(5)    against the City and Nsofu for intentional infliction of emotional distress based on "lying to the courts, filing false petitions, false imprisonment, and unreasonable search and seizure"; and

(6)    apparently against all Defendants for violating De'Bey's rights "to due process" and "to be free from an unreasonable search and seizure" under the New York Constitution.

(Id. ¶¶ 282(c)-(d), 406-27, 437-44, 454-56)[10]

>    On June 1, 2021, Defendants moved to dismiss the SAC in part, and this Court

referred the motion to Judge Cave for an R&R.  (Order of Referral (Dkt. No. 86); Def. Mot.

(Dkt. No. 93))  On July 6, 2021, De'Bey informed Judge Cave that he would not oppose

Defendants' motion.  (Pltf. July 6, 2021 Ltr. (Dkt. No. 100) at 1)

---

[10]  Although at several points in these claims the SAC cites 42 U.S.C. §§ 1983 and 1985 (see SAC (Dkt. No. 62) ¶¶ 406, 415, 419, 454), it is clear from context that De'Bey intends to assert these claims under state law, and Judge Cave properly construes them as such.

Although the SAC asserts claims against additional defendants, Judge Cave correctly notes that "De'Bey has since voluntarily withdrawn or otherwise abandoned his claims against these other defendants."  (R&R (Dkt. No. 102) at 10 n.6 (citing Dkt. Nos. 56, 63, 80, 84))

On October 26, 2021, Judge Cave issued a thorough and well-reasoned 49-page R&R, recommending that Defendants' motion to dismiss be granted in part and denied in part. (R&R (Dkt. No. 102) at 47-48)

In her R&R, Judge Cave notifies the parties that they have fourteen days from service of the R&R to file any objections, pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure.  (Id. at 49)  The R&R further states that "[f]ailure to object within fourteen (14) days will result in a waiver of objections and will preclude appellate review."  (Id. (emphasis omitted))  Defendants informed this Court that they would not file objections to the R&R.  (Def. Nov. 23, 2021 Ltr. (Dkt. No. 106) at 1)  De'Bey did not file objections to the R&R.

## DISCUSSION

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to the magistrate judge's recommendations, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  Where, as here, no objections are filed to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived.  See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); Spence v. Superintendent, Great

Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").  This Court has nonetheless reviewed Judge Cave's R&R for clear error.

As to De'Bey's Section 1983 claims against the City, Judge Cave correctly concludes that, even construing the SAC liberally, De'Bey "has failed to allege a claim for municipal liability under Monell" on any of his claims.  (R&R (Dkt. No. 102) at 19)  Indeed, as to most of his Section 1983 claims, De'Bey makes no effort to allege a policy or practice – or a decision by a policymaker – that could give rise to municipal liability.  (See id. at 19-21); see also Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.").

As Judge Cave notes, the only allegations in the SAC that appear to assert more widespread conduct that could possibly give rise to Monell liability are the allegations that (1) by using "'Safety Interventions,'" the City has "created a policy or custom under which unconstitutional practices [occur,] such as the breaking and entering into the homes of New Yorkers . . . and weaponizing police"; (2) the City is "responsible for its inexcusable failure to train its officers on their ministerial duties regarding" seizing mobile devices from arrestees; and (3) the City "fails to adequately discipline [NYPD] officers for misconduct," even after receiving credible complaints against the officers, including those submitted to the City's Civilian Complaint Review Board ("CCRB").  (R&R (Dkt. No. 102) at 19-21; SAC (Dkt. No. 62) ¶¶ 326, 348-61)  As Judge Cave explains, however, "[w]hile [De'Bey] claims that the City has a policy called 'Safety Interventions' by which the NYPD assists ACS with unconstitutional searches, he alleges no facts from which the Court can properly infer that such a policy exists."  (R&R (Dkt.

11

No. 102) at 19)  "Similarly, De'Bey's reliance on his own, isolated interactions do not plausibly allege that ACS has a policy of 'weaponizing the police' to effect unconstitutional searches." (Id. at 19-20)

De'Bey's "attempts to plead Monell liability under a failure-to-train theory are also unavailing," because "[t]his allegation is conclusory and relates to a single incident of allegedly unconstitutional conduct, and thus is 'not sufficient to support a claim for municipal liability.'"  (Id. at 20 (quoting Sulaymu-Bey v. City of New York, 17-cv-3563 (AMD) (SJB), 2019 WL 1434597, at *11 (E.D.N.Y. Mar. 29, 2019)))  Finally, De'Bey's claim "that the CCRB failed to investigate credible complaints about NYPD officers" "even if true, does not plausibly suggest that the City was deliberately indifferent to the type of misconduct by ACS that De'Bey alleges in the SAC."  (Id. at 20-21)  This Court finds no clear error in Judge Cave's recommendations with respect to De'Bey's Section 1983 claims against the City.

As to De'Bey's First Amendment and Fourteenth Amendment Equal Protection claims premised on religious discrimination, Judge Cave recommends that those claims be dismissed as to all Defendants.  (Id. at 21-25)  Judge Cave concludes that the SAC does not state a First Amendment Free Exercise claim, because even assuming "that De'Bey's veganism is a sincerely held religious belief, he does not plausibly allege that any City regulation facially targets, or was otherwise enacted to restrict, this religious tenet."  (Id. at 23)  Moreover, De'Bey "pled guilty to endangering A.A.'s welfare," and "acknowledges A.A.'s 'severe malnourishment' and significant weight loss several times in the SAC."  (Id. at 24)  Accordingly, "De'Bey has 'not alleged facts to support a finding that [his] religion was taken into account by defendants when they removed [his] [c]hildren' following reports of their neglect."  (Id. (quoting People United for Children, Inc. v. City of New York, 108 F. Supp. 2d 275, 298 (S.D.N.Y. 2000)

(holding that plaintiffs did not state a Free Exercise claim where, inter alia, ACS removed children who were unvaccinated due to their parents' religious beliefs)))

Judge Cave likewise concludes that De'Bey's Equal Protection claim must be dismissed, because "De'Bey has not plausibly alleged that any Defendant was motivated by religious animus." (Id. at 25)  And, to the extent that De'Bey is asserting an Equal Protection claim based on discriminatory treatment of his underweight children – in comparison to overweight children – Judge Cave observes that the SAC does not "allege the existence of any similarly situated comparators who received more favorable treatment." (Id. (citing Ragland v. Coulter, No. 20 Civ. 2002 (EK) (VMS), 2021 WL 4430271, at *6 (E.D.N.Y. June 25, 2021) (dismissing Equal Protection claim based on ACS's removal of child where plaintiff provided only a "conclusory allegation that . . . [d]efendants acted against her with racial animus" and did not plausibly allege she was "treated differently from a similarly situated non-African-American person" (quotation marks, citation, and alterations omitted))))  This Court finds no clear error in Judge Cave's recommendation that De'Bey's Free Exercise and Equal Protection claims be dismissed.

Judge Cave also rejects De'Bey's substantive due process claim based on the emergency removal of his children.  (Id. at 27)  "On February 27, 2019 – the same day as the [e]mergency [r]emoval [of De'Bey's children] – ACS filed the Petitions, and the Family Court held a hearing during which it confirmed that the grounds for removal were proper." (Id.)  "As a result, De'Bey cannot plausibly claim that the [e]mergency [r]emoval constituted the type of 'shocking, arbitrary, and egregious' behavior that is necessary to sustain a substantive due process claim." (Id. (quoting Tyson v. City of New York (Admin. Child Servs.), 18-cv-8515 (GBD) (KHP), 2019 WL 8437455, at *4 (S.D.N.Y. Nov. 8, 2019), report and recommendation

13

adopted, 2020 WL 949484 (S.D.N.Y. Feb. 27, 2020)))  This Court finds no clear error in Judge

Cave's recommendation that De'Bey's substantive due process claim be dismissed to the extent

that claim is premised on the emergency removal of his children.[11]

As to De'Bey's procedural due process claims, Judge Cave correctly recognizes

that any such claim against the City must be dismissed, given Plaintiff's failure to adequately

plead a Monell claim.  (Id. at 29)  Judge Cave recommends, however, that Defendants' motion to

dismiss be denied to the extent that De'Bey intends to assert such a claim against any Defendant

in his or her individual capacity.  (Id.)  Judge Cave notes that Defendants' arguments on this

point are "thin" and raised only in a footnote.  (Id. at 29 (citing Sulaymu-Bey, 2019 WL

1434597, at *5 (declining to dismiss under Rule 12(b)(6) pro se plaintiffs' procedural due

process claim relating to the ex parte removal of their children)))  This Court finds no clear error

in Judge Cave's recommendation.

Judge Cave also finds that the SAC does not plausibly allege conspiracy claims

under 42 U.S.C. § 1983 or § 1985.  (Id. at 31)  As an initial matter, Judge Cave notes that "[t]he

vast majority of De'Bey's allegations concerning the existence of a conspiracy are 'conclusory,

vague, or general allegations of [a] conspiracy to deprive [him] of constitutional rights.'"  (Id. at

31 (quoting Porter v. City of New York, 03-CV-6463 (SJ), 2004 WL 7332338, at *5 (E.D.N.Y.

Mar. 15, 2004)))  De'Bey has not "allege[d] any objective factual basis from which the Court can

properly infer a meeting of the minds among the individuals who were involved in the alleged

constitutional violations, and as a result, De'Bey's conspiracy claims 'must be dismissed.'"  (Id.

at 32 (quoting Porter, 2004 WL 7332338, at *5))  Judge Cave further concludes that "De'Bey's

---

[11]  Defendants have not sought dismissal of De'Bey's substantive due process claims to the
extent they are based on conduct other than the removal of his children.

conspiracy claim against [Weekes] and Nsofu is barred by the intra-corporate conspiracy doctrine," because they are both ACS employees and are therefore "'legally incapable of conspiring together' under the intra-corporate conspiracy doctrine."  (Id. (quoting Blue v. City of New York, 16-CV-9990 (VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018))  Finally, as to De'Bey's conspiracy claims under Section 1985, Judge Cave concludes that the SAC "does not contain 'any facts from which the Court can infer that members of the NYPD or ACS were motivated by class-based animus.'"  (Id. at 33 (quoting Yi Sun v. N.Y.C. Police Dep't, No. 18 CV 11002 (LTS) (SN), 2020 WL 4530354, at *8 (S.D.N.Y. Aug. 6, 2020)))  This Court finds no clear error in Judge Cave's recommendation that De'Bey's conspiracy claims – whether brought under 42 U.S.C. § 1983 or § 1985 – be dismissed.

As to De'Bey's state law claims, Judge Cave finds that he has not adequately "allege[d] the City's liability under a theory of negligent hiring or retention[,] because [he has not] allege[d] that any of the individual Defendants were acting outside the scope of their employment."  (Id. at 35); see also Barnville v. Mimosa Cafe, No. 14-CV-518 (GHW), 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014) ("Under New York law, where an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training").  The SAC "describes behavior that can only be understood as within the scope of the individual Defendants' employment with ACS or the NYPD."  (R&R (Dkt. No. 102) at 35)  This Court finds no clear error in Judge Cave's recommendation that De'Bey's negligent hiring or retention claim against the City must be dismissed.

Judge Cave recommends that De'Bey's claims under the New York Constitution be dismissed as against the individual Defendants, but that he be permitted to proceed against the City under a theory of respondeat superior.  (Id. at 38-39)  Judge Cave explains that De'Bey's

claims against the individual Defendants must be dismissed "because Section 1983 provides an adequate remedy under the U.S. Constitution's parallel provisions." (Id. at 38) However, "[b]ecause '§ 1983 does not provide an alternative remedy for [De'Bey]'s state constitutional claims' against the City under a theory of respondeat superior," those claims are not subject to dismissal. (Id. at 39 (quoting Brown v. City of New York, 13-cv-06912 (TPG), 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017))) This Court finds no clear error in these recommendations. See Williams v. City of New York, No. 14-cv-5123 (NRB), 2015 WL 4461716, at *6 (S.D.N.Y. July 21, 2015) ("The City can, however, be liable on a respondeat superior theory with respect to claims arising from state law, including the New York State Constitution and common law.").

Judge Cave finds that De'Bey's "false arrest claim, whether asserted under state or federal law, is legally deficient" and should be dismissed. (R&R (Dkt. No. 102) at 41) Judge Cave explains that De'Bey acknowledges in the SAC that he was arrested for endangering his children's welfare, and that "he later pled guilty to these charges with respect to A.A." (Id.) "While De'Bey claims that aspects of his plea were coerced . . . , he does not, and cannot, claim that his conviction was reversed on appeal." (Id.) De'Bey's conviction provides "'conclusive evidence' of probable cause for the confinement," and probable cause is a complete defense to De'Bey's false arrest claim. (Id. (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996))); see also Johnson v. Pugh, No. 11-CV-385 (RRM) (MDG), 2013 WL 3013661, at *2-3 (E.D.N.Y. June 18, 2013) (dismissing false arrest claim because plaintiff's "plea and conviction establish[ed] probable cause for arrest," notwithstanding plaintiff's argument that his "guilty plea

was coerced").  This Court finds no clear error in Judge Cave's recommendation that De'Bey's false arrest/false imprisonment claim be dismissed.[12]

Judge Cave further recommends that De'Bey's intentional infliction of emotional distress ("IIED") claim against the City and Nsofu be dismissed.  (R&R (Dkt. No. 102) at 42)  Judge Cave concludes that, insofar as this claim is asserted against the City, it should be dismissed "because it is barred by public policy."  (Id. (citing Cummings v. City of New York, No. 19 Civ. 7723 (CM) (OTW), 2021 WL 1163654, at *10 (S.D.N.Y. Mar. 26, 2021))); see also Lauer v. City of New York, 659 N.Y.S.2d 57, 58 (2d Dep't 1997) ("It is well settled that public policy bars claims sounding in [IIED] against a governmental entity.").  Judge Cave concludes that the IIED claim against Nsofu should be dismissed because it is premised on Nsofu's "participation in the [e]mergency [r]emoval [of De'Bey's children] and [Nsofu's] verification of the Petitions . . . , i.e., the same conduct on which [De'Bey] bases his constitutional claims against her."  (R&R (Dkt. No. 102) at 43)  "'[B]ecause more traditional tort remedies appear to be available to address his injuries, [De'Bey's] IIED . . . claim[] must be dismissed.'"  (Id. at 43 (quoting Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (HBP), 2015 WL 5707496 at *10 (S.D.N.Y. Sept. 29, 2015))); see also E.E.O.C. v. Die Fliedermaus, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) ("Under New York law, [IIED] is . . . precluded where the offending conduct is embraced by a traditional tort remedy." (quotation marks and citations omitted)).  This Court finds no clear error in Judge Cave's recommendation that De'Bey's IIED claim be dismissed.

---

[12]  Judge Cave recommends that Plaintiff's false arrest/false imprisonment claim be dismissed "without prejudice."  (See R&R (Dkt. No. 102) at 48).  She does not explain the basis for the "without prejudice" recommendation.  For the reasons discussed above, any amendment to the false arrest/false imprisonment claim would be futile.  Accordingly, this claim will be dismissed with prejudice.

With respect to De'Bey's "false medical report" claim relating to the conduct of HHC employees, Defendants argue that (1) HHC is a public benefit corporation independent of the City, and that accordingly any claim based on the conduct of HHC employees cannot be asserted against the City; and (2) De'Bey may not assert a claim against HHC because he did not add HHC to the case caption, despite being instructed to do so.  (Def. MTD Br. (Dkt. No. 94) at 28)  Judge Cave concludes that this claim is "improperly asserted against the City" and should be "dismissed to the extent that [De'Bey] asserts it against the City."  (R&R (Dkt. No. 102) at 45)  As to HHC, Judge Cave notes that "De'Bey failed to comply with the Court's directive to add [HHC as a Defendant] to the caption."  (Id.)  The SAC nonetheless "makes clear that [De'Bey] intended to assert his false medical report claim against [HHC], which has appeared through counsel."  (Id. at 45-46)  Accordingly, Judge Cave recommends that "to the extent Defendants seek dismissal of De'Bey's false medical report claim against [HHC]," that portion of Defendants' motion should be denied.  (Id. at 46)  This Court finds no clear error in Judge Cave's recommendation that De'Bey's false medical report claim be permitted to proceed solely against HHC.

As to leave to amend, Judge Cave recommends that it be denied.  (Id.)  Judge Cave notes that "De'Bey has already amended his pleading twice . . . , and, given [Judge Cave's] analysis of the substantive deficiencies in each of his claims set forth above, [she] is not persuaded that another attempt to state a viable claim would be successful."  (Id. at 47)  Moreover, "courts in this District 'routinely deny' granting leave to amend that would allow a plaintiff a 'third bite at the apple.'"  (Id. (quoting Binn v. Bernstein, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020)))  This Court finds no clear error in Judge Cave's recommendation that De'Bey not be given further leave to amend.

This Court has reviewed the remaining portions of Judge Cave's comprehensive and well-reasoned R&R and is satisfied that "there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

## **CONCLUSION**

Judge Cave's R&R is adopted as set forth above.  Defendants' motion to dismiss is granted in part and denied in part as set forth above.  Leave to amend is denied.

The Clerk of Court is directed to terminate the motion (Dkt. No. 93).

Dated: New York, New York
      March 29, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge